IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DONALD SMITH,                              )
                                           )
        Petitioner                         )        Case No. 1:17-cv-00257 (Erie)
                                           )
vs.                                        )
                                           )        RICHARD A. LANZILLO
SUPT. LAWRENCE MAHALLY,                    )        UNITED STATES MAGISTRATE JUDGE
ATTORNEY GENERAL OF THE                    )
STATE OF PENNSYLVANIA,                     )        MEMORANDUM OPINION AND
JOSH SHAPIRO, DISTRICT                     )        ORDER ON PETITION FOR HABEAS
ATTORNEY OF VENANGO COUNTY                 )        CORPUS RELIEF
                                           )
                                           )        ECF NO. 4
                                           )

        Donald Smith (Smith), proceeding *pro se*, has filed a Petition for Writ of Habeas Corpus

pursuant to 28 U.S.C. § 2254 (the Petition).[1]  ECF No. 4.  He challenges his conviction for

kidnapping, criminal conspiracy to commit simple assault, simple assault, possession of a weapon,

terroristic threats, and possession of drug paraphernalia.  For the reasons that follow, the Petition

will be dismissed because none of the proposed grounds merits the grant of federal habeas relief.[2]

Furthermore, because jurists of reason would not find this disposition of the petition debatable, a

certificate of appealability will also be denied.

---

[1] Under § 2254,  a habeas petitioner must, at the time of filing, be in custody under the conviction he is attacking. 28
U.S.C. § 2254; *Obado v. New Jersey*, 328 F.3d 716 (3d Cir. 2003), *see also Lackawanna Cty. Dist. Att'y v. Coss*, 532 U.S. 394,
401–02 (2001); *Maleng v. Cook*, 490 U.S. 488, 490-91 (1989).  It appears from the state court docket that Smith is no
longer incarcerated and has been released on parole.  *See* Court of Common Pleas criminal docket, available at available
at https://ujsportal.pacourts.us/DocketSheets/CPReport.ashx?docketNumber=CP-61-CR-0000733-
2007&dnh=jfXi3LIDrhuY2qZMsNySKQ%3d%3d (last visited April 30, 2019) [hereinafter "Crim. Docket"].  But as the
Supreme Court explained, a parolee can still challenge his conviction by a habeas petition.  *See Jones v. Cunningham*, 371
U.S. 236 (1963).  The Supreme Court considers a parolee in "custody" under § 2254(b) because "the custody and control
of the Parole Board involve significant restraints on petitioner's liberty ... which are in addition to those imposed by the
State upon the public generally."  *Id.* at 242, 83 S. Ct. 373.  *See also Lehman v. Lycoming County Children's Services Agency*, 458
U.S. 502, 509, 102 S. Ct. 3231, 73 L.Ed.2d 928 (1982) (quoting *Jones*).  Since Smith was sentenced to a five-year term of
probation, he remains in custody for habeas corpus purposes and his petition is not moot.

[2] Petitioner and Respondent have consented to the exercise of jurisdiction by a United States Magistrate Judge. ECF
Nos. 16 and 17.

I.      Factual Background

Somewhat unusually, neither the trial court nor Smith's Brief to the Pennsylvania Superior

Court relate the background facts underlying Smith's criminal case.  As the Superior Court noted on

direct appeal, "the underlying facts resulting in the charges in this case are not set forth in the trial

court's Opinion of February 12, 2010, or in the Brief for Appellant.  In addition, the

Commonwealth has not filed a brief in connection with this appeal."  *See* ECF No. 12-1, p.40 n.1.

Addressing Smith's appeal in his Post Conviction Relief Act (PCRA) proceedings, the Pennsylvania

Superior Court recounted the factual history of the case as follows:

> Appellant and a co-defendant, Shane Carey, confronted the
> complainant, Ian Jordan, about money Jordan owed Appellant.
> Appellant and co-defendant then drove Jordan in Carey's car,
> verbally threatened him, and physically struck him.  When the car
> came to a stop sign, Jordan fled into a nearby cornfield.  Appellant
> and Carey chased Jordan on foot, and Carey tackled him.  Appellant
> and Carey proceeded to assault Jordan in the field.  Afterwards,
> Appellant and Carey returned to the car and left the scene.  Jordan
> walked back to the roadway and received assistance from a passing
> motorist, who called 911.  Jordan did not immediately report the
> incident.  Jordan reported the encounter to the police later in the day
> and stated he was "pistol-whipped."  He later stated that Appellant
> held a knife to his throat when they were in the car.  Officers then
> obtained a warrant to search Appellant's residence.  The warrant
> listed Appellant's business address, but a detective testified at trial
> that he telephoned the magisterial district magistrate with the correct
> address for Appellant's residence.  During the search, officers
> discovered a small amount of marijuana, paraphernalia related to the
> use of marijuana, a white powder on a plate, and a black, flip-type,
> locking blade knife.  A detective testified at trial that the knife was
> capable of being opened with a motion of the wrist.  Officers
> obtained a second search warrant for drug evidence and recovered a
> prescription bottle of dihydrocodone and one tablet of
> hydromorphone.  Appellant was taken into custody and denied
> involvement in an altercation with Jordan during a videotaped
> interrogation.  The videotape of Appellant's interrogation was played
> at trial.  Subsequently, Appellant and Jordan were confined at the
> same jail.  Jordan asserted that Appellant, both personally and
> through other inmates, threatened him and offered him money not to
> testify.

*Id.* at pp. 204-206.

II.     Procedural History

A.      Proceedings in State Court

The Pennsylvania Superior Court also summarized the procedural history of the case in the

state courts:

> Appellant was charged as follows.  As to the initial incident involving
> Appellant, Carey, and Jordan, Appellant was charged with
> kidnapping, conspiracy, aggravated assault, simple assault, coercion,
> possession of an instrument of crime, recklessly endangering another
> person, and terroristic threats.  As to the contraband discovered
> during the search of his residence, Appellant was charged with
> possession with intent to use drug paraphernalia and possession of a
> small amount of marijuana.  Appellant was also charged with
> intimidation of a witness for the alleged interactions at the prison.
> The charges were consolidated for the purposes of trial.
>
> * * *
>
> … [T]he jury found Appellant guilty of one count each of
> kidnapping, criminal conspiracy, possession of a weapon, terroristic
> threats, possession with intent to use drug paraphernalia, and simple
> assault.  The jury acquitted Appellant of aggravated assault, criminal
> coercion, recklessly endangering another person, and intimidation of
> a witness.  The trial court separately found Appellant guilty of
> possession of a small amount of marijuana.  [Smith was] sentenced to
> an aggregate term of ten to twenty years' imprisonment and a
> consecutive five-year term of probation.  The Court's sentence was
> based on the imposition of a mandatory "second strike" sentence for
> kidnapping.  Appellant timely appealed and this Court affirmed.  The
> Pennsylvania Supreme Court denied Appellant's petition for
> allowance of appeal on September 27, 2011.  Trial counsel
> represented Appellant during his direct appeal.
>
> Appellant filed a timely pro se PCRA petition, which the Court
> received on December 13, 2011.  Appellant subsequently filed a
> supplemental pro se petition on December 13, 2012.  The court
> appointed counsel, who did not amend Appellant's petition.
>
> * * *
>
> … [T]he PCRA court denied Appellant's petition and granted PCRA
> counsel's motion to withdraw.  Appellant filed a timely notice of
> appeal ….  The PCRA court ordered Appellant to file a concise
> statement of errors complained of on appeal pursuant to Pa. R. A. P.
> 1925(b), and Appellant complied.

3

*Id.* at pp. 206-211.  The Superior Court affirmed the denial of PCRA relief.  *Id.* at 246.  Smith did not

seek an allowance of appeal from the Pennsylvania Supreme Court.

      B.      Proceedings in Federal Court

     Smith filed the instant petition on September 18, 2017.  ECF No. 4.  He also supplemented

his petition with two additional claims on November 16, 2017.  ECF No. 6.  In the Petition, Smith

raised numerous grounds for relief, all of which are based on the alleged ineffectiveness of his

counsel:

| | |
|---|---|
| Ground One: | PCRA counsel ineffective for not arguing issues of merit against trial counsel and filing *Turner/Finley* letter; |
| Ground Two: | Trial counsel ineffective for not objecting timely to Judge's charge to jury which was misleading and bias (sic); |
| Ground Three: | Trial counsel ineffective for not using peremptory challenge on newspaper editer (sic) who sat on jury; |
| Ground Four: | Trial counsel ineffective for not filing motion to suppress video that was shown to jury that showed Smith's record. |

ECF No. 4, pp. 5-10.  His two supplemental grounds for relief are also ineffective assistance of

counsel claims:

| | |
|---|---|
| Ground Five: | Trial counsel ineffective for not objecting to testimony of a gun being involved, when a gun was never part of the case; |
| Ground Six: | Trial counsel ineffective for not objecting to testimony of a prior assault on the victim. |

ECF No. 6, p. 2.

     After being granted an extension of time, Respondents filed their Answer to the Petition on

January 8, 2018, contending that all of the Grounds for Relief are without merit.  ECF No. 12.

Respondents also filed the original state court record with this Court.[3]  Smith filed a Reply Brief. ECF No. 18.  The Petition is now ready for disposition.

III.     The Habeas Corpus Legal Standard

Habeas corpus is an "'extraordinary remedy' reserved for defendants who were 'grievously wronged' by the criminal proceedings." *Dunn v. Colleran*, 247 F.3d 450, 468 (3d Cir. 2001) (quoting *Calderon v. Coleman*, 525 U.S. 141, 146 (1998)).  In enacting the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Congress "significantly limited the federal court's power to grant a writ of habeas corpus." *Tolbert v. Ferguson*, 2019 WL 4677357 at *2 (E.D. Pa. Aug. 8, 2019).  Under § 2254, a district court may entertain an application for a writ of habeas corpus filed by a person in state custody "only on the ground that he is in custody in violation of the Constitution or laws of the United States." 28 U.S.C. § 2254(a).  Moreover, federal courts must give considerable deference to determinations made by state trial and appellate courts.  *See Renico v. Lett*, 599 U.S. 766, 772 (2010).  Thus, if a claim presented in a § 2254 petition has been adjudicated on the merits in state court proceedings, habeas relief cannot be granted unless:

> the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254 (d).  It is the habeas petitioner's burden to show that the state court's decision was contrary to or an unreasonable application of United States Supreme Court precedent and/or an unreasonable determination of the facts. *Moreno v. Ferguson*, 2019 WL 4192459, at *3 (W.D. Pa. Sept. 4, 2019).

---

[3] Those documents are indexed and numbered and this Court will cite them as "SCR No. _____."  When available, specific page numbers will be indicated.

The United States Court of Appeals for the Third Circuit has emphasized the heavy burden

habeas petitioners bear, noting that "even 'clear error'" by the state courts "will not suffice." *Orie v.*

*Sec. Pa. Dept. of Corrections*, 940 F. 3d 845, 850 (3d Cir. 2019). Rather, the state court must be wrong

"beyond any possibility for fair-minded disagreement." *Id.* (citations and some internal quotations

omitted). Moreover, the factual determinations of the state courts are presumed correct. *See* 28

U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a

person in custody pursuant to the judgment of a State court, a determination of a factual issue made

by a State court shall be presumed to be correct.").

III.     Analysis and Discussion

As the Court of Appeals for the Third Circuit explained,

> Undergirding federal habeas law is an extensive procedural
> framework that limits when and how a petitioner may raise post-
> conviction claims for relief and which claims are reviewable in federal
> court. Concerns of federalism, comity, and finality shape this
> complex framework and have required [courts] to generate specific
> rules for when a petitioner's claim may be adjudicated on the merits.

*Mathias v. Superintendent Frackville SCI*, 876 F.3d 462, 465 (3d Cir. 2015). Among the "specific rules"

relevant to the resolution of Smith's claims are those of timeliness and exhaustion.

A.     Timeliness

Before the Court can address the merits of Smith's petition, it must first decide whether it

was timely filed. *Romansky v. Superintendent Green SCI*, 933 F.3d 293, 298 (3d Cir. 2019). Pursuant to

AEDPA, a state prisoner must file his federal habeas claims within one year of the date his judgment

of sentence became final. 28 U.S.C. § 2244(d)(1)(A). Smith's conviction became final on the day of

his sentencing: April 15, 2009. Smith sought direct review of his conviction and sentence from the

Pennsylvania Superior Court and Pennsylvania Supreme Court. Pennsylvania Supreme Court denied

his petition for allowance of appeal on September 27, 2011 and Smith's sentence became final for

purposes of the one-year PCRA statute of limitations and the one-year federal habeas statute of

limitations ninety days afterward, December 26, 2011.  *See* 28 U.S.C. § 2244(d)(1)(A) (the one-year

federal limitations period generally begins on the date the petitioner's judgment of sentence became

final "by the conclusion of direct review or the expiration of the time for seeking such review").

Because Smith filed his PCRA petition earlier—on December 13, 2011—the one-year habeas statute

was "immediately tolled" on December 26, 2011.  *Nelson v. Superintendent of SCI-Retreat*, 2019 WL

897296, at *2 n.4 (E.D. Pa. Jan. 31, 2019).  Smith's PCRA petition remained pending in the state

court system until September 27, 2016.  On that date, the one-year AEDPA statute of limitations

began to run, giving Smith until September 27, 2017 to file his petition.  He filed his petition on

September 18, 2017, eleven days before the expiration of the statute of limitations.  Thus, his

petition is timely.

      B.      Exhaustion and Procedural Default

      As a general matter, a federal district court may not consider the merits of a habeas petition

unless the petitioner has "exhausted the remedies available" in state court.  *See* 28 U.S.C. §

2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).  A petitioner satisfies the exhaustion

requirement "only if [he or she] can show that [they] fairly presented the federal claim at each level

of the established state-court system for review."  *Holloway v. Horn*, 355 F.3d 707, 714 (3d Cir. 2004).

The purpose of the exhaustion requirement is to "give the state courts a full and fair opportunity to

resolve federal constitutional claims before those claims are presented to the federal courts ... by

invoking one complete round of the State's established appellate review process."  *O'Sullivan*, 526

U.S. at 845.

      In order to "fairly present" a claim for exhaustion purposes, the petitioner must advance the

claim's "factual and legal substance to the state courts in a manner that puts them on notice that a

federal claim is being asserted."  *Bennett v. Superintendent Graterford SCI*, 886 F.3d 268, 280 (3d Cir.

2018) (quoting *McCandless*, 172 F.3d at 261)).  A petitioner may exhaust a federal claim either by

raising it on direct appeal or presenting it in post-conviction PCRA proceedings. *O'Sullivan*, 526 U.S. at 845. Either way, the petitioner must present his federal constitutional claims "to each level of the state courts empowered to hear those claims." *Id.* at 847 ("requiring state prisoners [in order to fully exhaust their claims] to file petitions for discretionary review when that review is part of the ordinary appellate review procedure in the State"). "Once a petitioner's federal claims have been fairly presented to the state's highest court, the exhaustion requirement is satisfied." *Stoss v. Estock*, 2019 WL 2160464, at *3 (M.D. Pa. May 17, 2019) (citing *Castille v. Peoples*, 489 U.S. 346, 350 (1989)).

An important corollary to the exhaustion requirement is the doctrine of procedural default. "Just as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address" the merits of those claims "in the first instance." *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991). Procedural default intertwines with exhaustion in the following manner: when a claim has never been " 'fairly presented' to the state courts, but state procedural rules bar the applicant from seeking further relief in state courts, the exhaustion requirement is satisfied" due to the lack of available state process, but the claims "are considered to be procedurally defaulted." *McKenzie v. Tice*, 2020 WL 1330668, at *5 (M.D. Pa. Mar. 23, 2020) (quoting *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999)). Such claims may not ordinarily be reviewed by a federal court. *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017) ("[A] federal court may not review federal claims that were procedurally defaulted in state court—that is, claims that the state court denied based on an adequate and independent state procedural rule.") (citations omitted).

Several caveats exist. First, "[a] state procedural rule can preclude federal habeas corpus review" only when the state rule is "independent of the federal question [presented] and adequate to support the judgment." *McKenzie*, 2020 WL 1330668, at *5 (quoting *Leyva v. Williams*, 504 F.3d 357,

365 (3d Cir. 2007)).  A rule is "independent" if it is not "'so interwoven with federal law' that it cannot be said to be independent of the merits of a petitioner's federal claims."  *Id.* (quoting *Johnson v. Pinchak*, 392 F.3d 551, 557 (3d Cir. 2004)).  A rule is "adequate" if it was "firmly established, readily ascertainable, and regularly followed at the time of the purported default."  *Leyva*, 504 F.3d at 366 (quoting *Szuchon v. Lehman*, 273 F.3d 299, 372 (3d Cir. 2001)).

Second, a petitioner can overcome procedural default, thereby permitting federal court review, if the petitioner can demonstrate either: (1) "cause" for the default and "actual prejudice" as a result of the alleged violation of federal law; or (2) that the failure to consider the claims will result in a "fundamental miscarriage of justice."  *Coleman*, 501 U.S. at 750.  To demonstrate cause and prejudice, the petitioner must show some objective factor external to the defense that impeded counsel's efforts to comply with a state procedural rule.  *Slutzker v. Johnson*, 393 F.3d 373, 381 (3d Cir. 2004) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).  To demonstrate a fundamental miscarriage of justice, a habeas petitioner must typically show actual innocence.  *Schlup v. Delo*, 513 U.S. 298, 324-26 (1995).

Applying these principles, the Court concludes that two of the grounds for relief raised in Smith's Petition are procedurally defaulted.  For purposes of this analysis, the Court will group those together for collective disposition.  Three of the claims raised in Smith's habeas petition were denied on the merits by the Superior Court on PCRA review.  As such, the Court will not review those claims de novo and Smith must demonstrate more than a violation of his Sixth Amendment rights.  He also must overcome the AEDPA deferential standard, as well as the presumption of correctness this Court must afford the state court findings under § 2254(e).  *See, e.g., Pritchett v. Superintendent, SCI-*

*Laurel Highlands*, 2020 WL 1643385, at *5 (W.D. Pa. Apr. 2, 2020).[4]  Finally, one claim will be reviewed de novo.

      C.      Claims Five and Six are Procedurally Defaulted.

      In his fifth and sixth grounds for relief, Smith alleges that trial counsel was ineffective for not objecting to witness testimony (a) that a gun was involved in the crime charged and (b) that Smith had previously assaulted the victim "a few weeks before the underlying offenses."  ECF No. 6, ¶¶ 1-2.  Both of these grounds for relief were raised in Smith's supplemental habeas petition.  *Id.* But Smith did not present either of these claims during his state court proceedings.  Because the time to do so has long passed, these claims are procedurally defaulted and unreviewable in federal court unless Smith can overcome the default.  *See, e.g., Jones v. Ferguson*, 2020 WL 2145408, at *13 (E.D. Pa. Apr. 6, 2020), *report and recommendation adopted*, 2020 WL 2126853 (E.D. Pa. May 5, 2020); *Hawes v. Mahalley*, 2020 WL 1508267, at *3 (M.D. Pa. Mar. 30, 2020) (acknowledging that the PCRA statute of limitations "is an 'adequate' and 'independent' state procedural rule which is consistently applied") (quoting *Doctor v. Walters*, 96 F.3d 675, 684 (3d Cir. 1996)).

      Smith can overcome this procedural default by demonstrating either: (1) "cause" for the default and "actual prejudice" as a result of the alleged violation of federal law; or (2) that the failure to consider the claim will result in a "fundamental miscarriage of justice."  *Coleman*, 501 U.S. at 750. He does neither.  First, aside from general averments of incompetence and misconduct, Smith

---

[4] Since Smith argues that PCRA counsel was ineffective for failing to challenge the actions of trial counsel, these are layered claims of ineffectiveness.  In the case of *Commonwealth v. McGill*, 832 A.2d 1014 (Pa. 2003), the Pennsylvania Supreme Court clarified the law on layered ineffectiveness claims brought under the PCRA and set forth in detail the framework for pleading and proving such claims.  "When an issue is presented via a layered claim of ineffectiveness, the only viable claim is that related to the most recent counsel, usually appellate counsel.  *Id.* at 1022.  A petitioner must then present the claim of ineffectiveness of appellate counsel through the three-pronged test of *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (Pa. 1987).  *Id.*  Because it is a nested claim, in order to establish the first prong of the *Pierce* test as to the performance of appellate counsel, a petitioner is required to demonstrate the ineffectiveness of trial counsel.  In other words, a petitioner must establish all three prongs of the *Pierce* test as to trial counsel's ineffectiveness before the question of appellate counsel's ineffectiveness can be addressed. *Id.* at 1022-23."  *Risjan v. Wetzel*, 2019 WL 3146207, *10 n.3 (M.D. Pa. Jul. 15, 2019).

advances no compelling argument to establish that a fundamental miscarriage of justice will occur if this Court does not consider his claims.[5]

As to "cause," Smith appears to assert that cause exists to overcome his procedural default because the information about the gun was "false" and that the prior assault on the victim "never happened."  ECF No. 18, p. 7.  He provides no information or citation to the record to back up these claims nor does he discuss how he may have been prejudiced.  To demonstrate cause and prejudice, the petitioner must show some objective factor external to the defense that impeded counsel's efforts to comply with a state procedural rule.  *Slutzker v. Johnson*, 393 F.3d 373, 381 (3d Cir. 2004) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).  Smith fails to establish the existence any external factor that prevented him from raising these claims in the state court.

Instead, he attempts to shield these two claims from procedural default by taking refuge under *Martinez v. Ryan*, 556 U.S. 1 (2010).  *See id.* pp. 8-9.  Under *Martinez,* in order to avoid the default of an ineffective-assistance-of-trial-counsel claim, Smith must establish two things: (1) that the ineffective-assistance-of-trial-counsel claim is "substantial"; and (2) that PCRA counsel was ineffective within the meaning of *Strickland*.  *Martinez*, 566 U.S. at 14; *Workman v. Superintendent*, 915 F.3d 928, 937 (3d Cir. 2019).  Smith has not established the first factor; therefore, the Court does not need to evaluate whether he has demonstrated the second.

The Court of Appeals has explained that an ineffective-assistance-of-trial-counsel claim is "substantial" if it has "some merit."  *Workman*, 915 F.3d at 938.  The evaluation of whether a claim has "some merit" is the same one that a federal court undertakes when it considers whether to grant

---

[5] To establish a "miscarriage of justice" for purposes of overcoming procedural default, the petitioner must present evidence of "actual innocence" that is "so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error[.]"  *Schlup v. Delo*, 513 U.S. 298, 316 (1995).  The "miscarriage of justice" exception only applies in extraordinary cases where the petitioner demonstrates that a constitutional violation has probably resulted in the conviction of one who is actually innocent.  *Id.* 513 U.S. at 316. Based on the Court's review of Smith's arguments and the trial record, there is no question that this is not the type of extraordinary case in which he can overcome the default of his claims by way of the miscarriage of justice exception.

a certificate of appealability. *Id.* Thus, Smith "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Workman*, 915 F.3d at 938 (a petitioner "must 'show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should be resolved in a different manner of that the issues presented were adequate to deserve encouragement to proceed further.'") (quoting *Martinez*, 566 U.S. at 14, which cited *Miller-El v. Cockrell*, 537 U.S. 322 (2003)).

Smith has not demonstrated his claim of trial counsel's ineffectiveness for failing to object to this testimony has "some merit." The law presumes that counsel was effective. *Strickland*, 466 at 689. Thus, to ultimately prevail on his request for federal habeas relief, Smith would have to show that trial counsel's decision not to object to the testimony in question was objectively unreasonable under the *Strickland* standard. In this case, trial counsel explained these decisions at the PCRA evidentiary hearing. As to the reference to a gun, counsel made clear that he wanted this information heard by the jury because he felt discrepancies about the gun would damage the credibility of a witness and did impeach the testimony of one witness. The same is true for unsubstantiated allegations a witness made of a prior assault Smith committed against him. Here, trial counsel explained that he did not object because other evidence—the absence of any documentation or corroboration—would undermine the witness' credibility in front of the jury. And, the record reveals that counsel did in fact use this in an attempt to impeach the witness' testimony. Given these explanations, it was objectively reasonable for trial counsel not to object and Smith therefore has not demonstrated that there is "some merit" to these claims of ineffectiveness.[6] *See, e.g., Hensley v. Cappoza*, 2019 WL 5457396, at *6 (W.D. Pa. Oct. 24, 2019).

---

[6] Smith appears to recognize as much. He acknowledges that "[t]rial counsel said he wanted this to be heard by the jury, he said the jury wouldn't believe it, he used this testimony to try to impeach Ian Jordan's testimony." ECF No. 18, p. 7.

Accordingly, Smith has not satisfied the first *Martinez* requirement, and his claim remains unreviewable in federal court. *See, e.g., Jones,* 2020 WL 2145408, at *13 . Grounds five and six cannot be reviewed in the instant proceeding and must be dismissed.

D.     Claim One Does Not Merit Relief.

In Ground One of the Petition, Smith contends that he should be granted habeas relief because his post-conviction counsel was ineffective "for not arguing issues of merit against trial counsel and filing a *Turner/Finley* letter."[7] ECF No. 4, p. 5. On appeal to the Superior Court from the denial of his PCRA petition, Smith lists "whether Appellant's PCRA counsel was ineffective for failing to provide the pro se Appellant with day one (1) and four (4) of the PCRA notes of testimony so that Appellant can completely litigate his claims on appeal where initial-review collateral counsel, filed a "no merit" letter upon Appellant." ECF No. 12-1, p. 67. In its opinion, the Superior Court noted the issue (*Id.* at p. 213-218), and held that

> Because Appellant cannot prove trial counsel's ineffectiveness with respect to these issues, his layered claim involving PCRA counsel's ineffectiveness also fails … Appellant's remaining objections to PCRA counsel's *Turner/Finley* letter – trial counsel stipulates to evidence, a conflict of interest based on trial counsel's stipulation to evidence, a conflict of interest based on trial counsel's election as district attorney, and the illegal imposition of a mandatory "second strike" minimum sentence – have been abandoned on appeal.

*Id.* at p. 246. Thus, Smith has exhausted this claim but although exhausted, the claim lacks merit.

The habeas statute expressly states that claims of ineffective assistance of state post-conviction counsel are not cognizable bases for habeas relief. *See* 28 U.S.C. § 2254(i). Hence, this claim is not cognizable in habeas proceedings and will be dismissed.

---

[7] This is a brief or letter indicating the appeal has no merit. *See Commonwealth v. Turner*, 518 Pa. 491, 544 A.2d 927 (1988), and *Commonwealth v. Finley*, 379 Pa. Super. Ct. 390, 550 A.2d 213 (1988) (en banc).

E.      Claim Two Does Not Merit Relief.

As a second ground for habeas relief, Smith argues that his trial counsel was ineffective in not objecting to the trial court's jury charge until after it was given.  ECF No. 4, p. 7.  Smith claims the trial court made several "untrue and bias[ed] statements" to which defense counsel "did not object until the Commonwealth had rested its case."  He does not provide specific examples of these untruths or misleading statements except to claim that the trial judge made false mention of a switch blade knife during the jury charge.  ECF No. 18. p. 3.  Smith provides no other examples of specific untruths and/or biases.

The Superior Court considered this ground for relief as part of Smith's broader claim that trial counsel was ineffective by failing "to object to the trial court's questioning of witnesses and summation of the evidence during the jury's charge." *Commonwealth v. Smith*, 54199813, *4.  So then, this claim was fairly presented to the Superior Court on appeal from the denial of PCRA relief and thus is exhausted.  Because the Pennsylvania Superior Court addressed this claim of ineffectiveness on the merits, this Court must, consequently, view it through AEDPA's highly deferential lens.  *See, e.g., Proper v. Clark,* 2020 WL 1814390, at *10 (W.D. Pa. Apr. 9, 2020).

The trial judge made the following remarks when charging the jury:

> It is significant at this point that before Mr. Jordan got out of the car that Mr. Carey did say to Jordan, "You ain't going nowhere unless you go with us." Now, that would—and this is the core point, I think for your decision in this case at this point is, was the movement from the car to the other car and then the transport, was it against Jordan's will or was it consensual? Obviously, if you are not convinced beyond a reasonable doubt that it wasn't consensual, then it would be your duty to acquit.  If you are convinced beyond a reasonable doubt that Jordan did not consent, then of course that would be the kidnapping charge.

SCR at 124.  Smith claims that his trial counsel should have objected to this charge because it was misleading and biased.  The Superior Court denied relief, holding that the trial court's comments did not misstate the evidence and amounted to nothing more than "gratuitous observations."

14

*Commonwealth v. Smith*, 2016 WL 5419813, *14 (Pa. Super. Ct. Sep. 26, 2017).  Thus, prejudice could

not be established under *Strickland.*

In rejecting Smith's contention that his trial counsel was ineffective for failing to object to

the trial court's comments, the Superior Court recognized that the trial court's comments conveyed

its "view of the importance of an isolated portion of Carey's videotaped statement to the police." *Id.*

at *14.  However, the Superior Court found—importantly—that the trial court did not misstate the

evidence.  *Id.*  The trial transcript confirms this; the mention of a knife by the trial judge was not

improper.  While instructing the jury, the trial court stated:

> Going on with the theory of the Commonwealth, at least as
> presented through Shane Carey, car doors were left open.  I think
> there was testimony to that effect.  That as they were in the car that
> Donny was smacking Jordan around.  He did not personally see a
> knife but says that Don did frequently carry a switch blade knife.
> You have that in evidence as Exhibit #12.  And that he observed –
> because he was driving, he could observe the defendant holding the
> seat belt behind Mr. Jordan and that his right hand was not visible to
> him; that they were on their way to Barkeyville to Mr. Jordan's
> mothers.

SCR at 124.  Here, the trial judge is summarizing the evidence for the jury, not commenting

inappropriately on its nature or significance.  Furthermore, the Superior Court pointed to the trial

court's overarching instruction to the jury that its "recollection of the testimony—and not the

court's—controlled, and that the judge made only "gratuitous observations." *Id.*

Thus, because juries are presumed to follow the Court's instructions, the Superior Court

concluded Smith was not entitled to relief on this claim and, by implication, he was not prejudiced

by counsel's failure to object.  *Id.*  (citing *Commonwealth v. Rykard*, 55 A.3d at 1184).

When it addressed this claim, the Superior Court applied the familiar three-pronged test for

ineffective assistance of counsel originally set forth in *Commonwealth v. Pierce*, 527 A.2d 973 (Pa. 1987)

(the "*Pierce* standard").  *See Commonwealth v. Smith*, 2016 WL 5419813, *6 (Pa. Super. Ct. Sept. 27,

2016).  The Superior Court stated that a claimant establishes ineffective assistance of counsel "when

15

he demonstrates that: (1) the underlying claim is of arguable merit; (2) that counsel's action or inaction was not grounded on any reasonable basis designed to effectuate the appellant's interest; and finally, (3) that counsel's action or inaction was prejudicial to the client." *Id.* (quoting *Commonwealth v. Charleston*, 94 A.3d 1012, 1018-19 (Pa. Super. 2014), *appeal denied*, 104 A.3d 523 (Pa. 2014) (some citations omitted). The Court of Appeals for the Third Circuit has held that this precise language comports with the "clearly established" federal standard governing ineffective assistance of counsel claims set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *See, e.g., Werts v. Vaughn*, 228 F.3d 178, 203 (3d Cir. 2000); *Tyma v. District Atty. Of Allegheny Cty.*, 2019 WL 7207302, *8 (W.D. Pa. Dec. 27, 2019) ("The *Pierce* standard has been found to be materially identical to the test enunciated in *Strickland v. Washington*"). Hence, the Superior Court did not apply a rule of law that is "contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). *See Werts*, 228 F.3d at 204; *Tyma*, 2019 WL 7207302, at *8.

Nor was the Superior Court's adjudication an "unreasonable application" of the *Strickland* standard or based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d)(1), (2); *Jacobs v. Horn*, 395 F.3d 92, 107 n. 9 (3d Cir. 2005). Under the "unreasonable application" prong of § 2254(d), the appropriate inquiry is whether the Pennsylvania courts' application of *Strickland* to Smith's ineffectiveness claim "was objectively unreasonable, *i.e.,* the state court decision, evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under *Strickland.*" *Werts*, 228 F.3d at 204.

The United States Supreme Court has emphasized that "even a strong case for [habeas] relief does not mean the state court's contrary conclusion was unreasonable." *See Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). Rather, a petitioner must show "that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v.*

16

*Richter*, 562 U.S. 86, 103 (2011).  Here, Smith's claim of ineffective assistance is neither "strong" nor "beyond any possibility for fairminded disagreement."  To the contrary, a careful review of the state court record reveals that the Superior Court applied the *Strickland* standard to the facts at hand in a fair and reasonable manner.  Smith cites no Supreme Court decision warranting a different outcome or which the Superior Court unreasonably applied.  Accordingly, habeas relief is unwarranted as to Smith's second ground for relief.

        F.        Ground Three Does Not Merit Relief.

In Ground Three, Smith complains that his trial counsel was ineffective for not using a preemptory challenge to excuse a local newspaper editor from the jury.  ECF No. 4, p. 8.  Smith presented this issue to the Superior Court on appeal from the denial of his PCRA petition and, thus, it has been properly presented and exhausted.  In his brief to the Superior Court, Smith framed the issue as one of

> Layered ineffective assistance of counsel for failing to raise a biased juror claim where the Editor of the local newspaper published nine (9) front page stories of Appellant's case and was sitting as the jury foreman for failing to litigate the claim?

ECF No. 12-1, p. 66.  The Superior Court noted the issue, recounting that

> Appellant, in his fifth issue, argues that Juror 8, a newspaper editor and foreperson of the jury, should have been stricken because it was likely he obtained outside information about the case.  He alleges two newspapers at which Juror 8 worked published stories about the crime.  Appellant's Brief at 25.  He notes that although the trial court asked whether Juror 8 could be fair and impartial, no further questions were asked regarding the information he obtained.  *Id.* Appellant further suggests that he failure to strike Juror 8 constitutes "structural error" dur to the juror's alleged bias.  *Id.*

ECF No. 12-1, p. 235.  The Superior Court denied relief.

First, the Superior Court observed that the trial court, during voir dire, was cognizant of the amount of media coverage Smith's case had generated.  *Id.* at p. 238.  The trial court then specifically inquired about the effect and pervasiveness of that coverage with Juror 8:

| | |
|---|---|
| The Court: | I mean, you are the editor, right? |
| Juror 8: | One of them. |
| The Court: | Obviously you have read about it in the paper. You don't necessarily believe everything in that newspaper, do you? |
| Juror 8: | Yes, Your Honor. |
| The Court: | Does counsel want to inquire. |
| Defense Counsel: | No. |

*Id.* at 237.  Trial counsel did not object to Juror 8 sitting on the jury.  *Id.*  The Superior Court also

noted that, at the PCRA hearing, Smith's defense counsel expressed a strategic reason for keeping

Juror 8 on the panel.  Counsel testified that

> The profile I was looking for was certainly I didn't want elderly
> people on that jury.  When you are making these assessments, it's
> tough … I felt that if they were to hear certain facts that would
> probably elicit a wrong attitude towards my client.  We were talking
> about drugs, tattoos, money, weapons, knives, possibly guns, injuries
> to a victim, and I thought a conservative crowd would shut down and
> not keep eyes and ears open.  So, I was looking for a younger kind of
> juror, someone from 25 to 45, educated, who would be able to follow
> instructions, listen to the attorneys, know that the case was open until
> they got the case in the jury room.  I also had to be careful too with
> male versus female gender.  At this point, I was looking for more
> male-oriented jurors than female.  Again, this is probably going to
> sound wrong, but gender, I was worried that females hearing the type
> of activities being suggested might take that in the wrong way.

*Id.*  The Superior Court, citing *Commonwealth v. Tedford*, 960 A.2d 1 (Pa. 2008), analyzed Smith's claim

under *Strickland*, noting that "[t]he purpose of voir dire is to ensure the empaneling of a fair and

impartial jury capable of following instructions of the trial court.[8]  Even exposure to outside

information does not ineluctably mean that a jury is unfair and partial."  ECF No. 12-1, p. 236

---

[8] As discussed above, both the Pennsylvania Supreme Court and the Third Circuit Court of Appeals have recognized
that the standard for ineffective assistance of counsel under Pennsylvania law is the same as the *Strickland* standard.
Therefore, for the purposes of simplicity and clarity, the Court will refer only to the *Strickland* standard.

(citations omitted).  Reviewing Smith's challenge, the Superior Court determined that he failed to establish the requisite prejudice under *Strickland*.  The Superior Court noted that the trial court recognized the amount of publicity associated with the case and asked the venire about their knowledge of the case and whether they could be impartial.  *Id.*  Indeed, several potential jurors indicated that they read about Smith's case in the newspaper.  *Id.*  Still others were excused for cause given their personal knowledge of the case.  *Id.*  And Juror 8 was specifically questioned about his knowledge and exposure to the case given his job as a local newspaper editor.  The Superior Court further observed that trial counsel "did not object for cause and did not separately exercise a peremptory strike after the pool was narrowed to thirty prospective jurors."  *Id.* at p. 237.  The Superior Court noted the reason for this:  "trial counsel explained that he did not seek to strike Juror 8 based on his belief that it was necessary to avoid conservative jurors and seat jurors who could be receptive to [Smith's] alternative lifestyle, including [Smith's] ownership of a tattoo parlor … [and Smith's] ownership of pit bulls."  *Id.*  Given this explanation, the Superior Court concluded that Smith was not prejudiced.

The Superior Court's determination that Smith was not prejudiced was not an objectively unreasonable application of *Strickland*, nor was it based on an unreasonable determination of the facts in light of the evidence.  The Court applied the correct legal standard, applying the *Strickland* analysis.  Thus, left for this Court is an analysis of whether the Superior Court's adjudication of this claim was an "unreasonable application of *Strickland*" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d)(1)-(2).  In undertaking this analysis, this Court is mindful that the "state court must be granted deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself."  *Harrington*, 132 S. Ct. at 785.

In rejecting Smith's criticism of his trial attorney's jury selection process, the Superior Court noted that trial counsel had articulated a reasonable trial strategy. *See Commonwealth v. Smith*, 2016 WL 5419813, *14. The Superior Court concluded that trial counsel had a "reasonable basis for accepting Juror 8." *Id.* at *15.

Moreover, Smith's underlying claim that Juror 8 was biased is meritless. The applicable federal law guarantees every criminal defendant "the right to a … trial [ ] by an impartial jury." U.S. Const. Amend. VI. Complementing this right are the protections afforded by the Due Process Clause, which require "that, if a jury is to be provided [ ], regardless of whether the Sixth Amendment requires it, the jury must stand impartial and indifferent to the extent commanded by the Sixth Amendment." *Morgan v. Illinois*, 504 U.S. 719, 727 (1992). Voir dire examination serves to protect the right to an impartial jury by providing the parties a means of uncovering juror bias. *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 143–44 (1994). Bias that emerges in response to voir dire questioning can lead to excusal of a juror for cause or may facilitate the parties' exercise of peremptory strikes. *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 554 (1984). Courts have distinguished between two types of challenges for cause: those based on actual bias, and those based on implied bias. *United States v. Mitchell*, 690 F. 3d 137, 142 (3rd Cir. 2012).

Smith contends that Juror 8 should have been challenged for actual bias. Smith asserts that the newspaper editor had "written several articles about this case, and trial counsel knew this, but still let him be on the jury." ECF No. 18, p. 3-4. To "rebut the presumption of a prospective juror's impartiality," it is not enough for a defendant to point to "the mere existence of any preconceived notion as to the guilt or innocence of the accused." *Irvin v. Dowd*, 366 U.S. 717, 723 (1961). Rather, a juror is deemed impartial if he can set aside his impression or opinion and render a verdict based on the evidence presented in court. *Id.* Here, Smith has not shown that the challenged juror was biased against him. First, the challenged juror did not express any partiality

against Smith himself.  He assured the trial judge that any past experience in connection to the case would not impact his ability to be fair in Smith's case.  *See Murphy v. Florida*, 421 U.S. 794, 802 (1975).  Moreover, as summarized previously, trial counsel did not object to Juror 8 as a member of the panel and later testified that he had a strategic reason for not doing so.  Therefore, trial counsel did not perform deficiently, and Smith has not shown that the jury was biased.

Accordingly, the Superior Court's adjudication of Smith's ineffective assistance of counsel claim for not objecting to this particular juror was neither an "unreasonable application of *Strickland*" nor did it "result[ ] in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state proceeding."  *See, e.g., Nalls v. Commonwealth, et al.*, 2014 WL 896630, *16 (W.D. Pa. Mar. 6, 2014).  Accordingly, habeas relief is unwarranted as to this claim.

G.      Ground Four Does Not Merit Relief.

As a fourth ground for relief, Smith contends that his trial counsel was ineffective for not moving to suppress a video which he asserts improperly provided the jury with evidence of his prior criminal record.  ECF No. 4, p. 10.  At trial,

> … a DVD of Appellant's statement to police was played to the jury. During the playing of the video recording, trial counsel requested a sidebar, at which time he requested a mistrial.  The portion prompting the request was an exchange between Appellant and Lieutenant Richard Goldsmith, when Appellant asked why an officer had his gun drawn when taking him into custody.  Lieutenant Goldsmith replied that it was a felony arrest and added "Donny, I know your record."  The court denied the motion for mistrial and trial counsel refused a cautionary instruction because he did not want to highlight the reference.

ECF No. 12-1, pp. 240-41.

Smith raised this issue on direct appeal.  He contended that the trial court erred by failing to grant his motion for a mistrial.  *See* ECF No. 12-1, pp. 69, 242.  After noting that the "mere passing reference to prior criminal activity is insufficient to establish improper prejudice itself," the Superior

Court declined to address the issue on the merits because Smith's appellate counsel failed to file a

complete record on appeal.  Notably absent from the record was the DVD itself.  *Id.* at 243.  The

Superior Court held that

> [w]ithout the ability to review the DVD, our review of this issue is
> significantly hampered, as without the DVD, we cannot appropriately
> consider whether Smith was prejudiced by the playing of the remark
> or whether, despite the Commonwealth's failure to adhere to the
> agreement, the remark constituted a mere passing reference.

*Id.* at p. 244.  The Superior Court then concluded that, because "the responsibility rests upon the

appellant to ensure that the record certified on appeal is complete in the sense that it contains all of

the materials necessary for the reviewing court to perform its duty," Smith "has waived this issue for

failing to include the DVD in the certified record."  *Id.* at p. 243 (citations omitted).

The manner in which Smith raised the issue in post-conviction proceedings and the way the

claim was addressed by the state courts is convoluted.  It may be that Smith's claim was

misconstrued by PCRA counsel and the PCRA court.  For example, Smith claimed in his PCRA

petition that trial counsel was ineffective for failing to move to suppress the video.  ECF No. 12-1,

p. 71.  But PCRA counsel, in his motion to withdraw, did not discuss the purported failure to file a

suppression motion and characterized the issue differently, focusing on Smith's post-arrest silence as

shown on the video recording.  PCRA counsel argued that Smith

> seeks to relitigate an issue taken before the Superior Court on direct
> appeal … This matter was taken up on direct appeal and denied …
> [I]t is undersigned counsel's position that this entire issue is waived as
> being litigated on direct appeal or being so addressed.  Petitioner
> simply tries to recycle the issue and take a second bit [sic] by adding
> his proposed issues of invalid *Miranda* and post arrest silence.

*Id.* at p. 244.  The PCRA court concurred with PCRA counsel, noting that on direct appeal the

Superior Court "dismissed this claim … after we refused [trial counsel's] motion for mistrial, counsel

refused the offer of a cautionary instruction."  *Id.*  The PCRA court did not discuss a failure to file a

suppression motion.  The Superior Court found the claim waived because Smith "did not object or

raise a separate claim of ineffective assistance of PCRA counsel based on this issue [in his objection

to PCRA counsel's no-merit brief].  Moreover, Appellant's Rule 1925(b) statement did not fairly

indicate a claim based on this issue … Accordingly, we conclude that Appellant has failed to

preserve and establish error based on this issue." *Id.* at p. 245.  Thus, it cannot conclusively be

ascertained whether the issue of trial counsel's ineffectiveness for failing to file a suppression motion

was exhausted in state court.

      This Court need not resolve the more complex issue of procedural default, however, if it

determines that Smith's ineffectiveness claims have no merit, even under a *de novo* review.  *Lambrex v.*

*Singletary*, 520 U.S. 518, 525 (1997) (where analysis of procedural default is complex, the court may

skip the issue and proceed to the merits).  *See also* Brian R. Means, *Federal Habeas Manual* § 9B:5

(2019) ("[W]here the procedural default question is relatively complicated or when relief is due to be

denied even if claims are not procedurally barred, a federal court is authorized to skip over the

procedural default issue and proceed to deny the claim on the merits.").[9]  That course is followed

here.  *See, e.g., Siegel v. Giroux*, 2019 WL 1014730, at *7 (W.D. Pa. Mar. 4, 2019), *certificate of*

*appealability denied sub nom. Siegel v. Superintendent Albion SCI*, 2019 WL 4875466 (3d Cir. Sept. 16,

2019).

      The Supreme Court set the standard for evaluating an ineffective assistance of counsel claim

in *Strickland v. Washington*, 466 U.S. 668 (1984).  To establish counsel's ineffective assistance under

*Strickland*, a petitioner must demonstrate that his attorney's performance (1) "fell below an objective

standard of reasonableness," and (2) that counsel's deficient performance prejudiced the defendant.

*Id.* at 688, 692.  "The benchmark for judging any claim of ineffectiveness must be whether counsel's

---

[9] The Supreme Court held "[w]e do not mean to suggest that the procedural-bar issue must be resolved first; only that it ordinarily should be. Judicial economy might counsel giving the *Teague* question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U. S. at 520.  *See also Bell v. Cone*, 543 U. S. 447, 451 n.3 (2005) (citing § 2254(b)(2)).

conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686.

Smith has not satisfied *Strickland's* first requirement: trial counsel's performance did not fall below an objective standard of reasonableness. A court, in determining whether counsel's performance fell below an objective standard of reasonableness, must evaluate "whether counsel's assistance was reasonable considering all the circumstances." *Id.* at 688. In applying the *Strickland* test to counsel's performance, a court must be "highly deferential," and "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Id.* at 689. The Court must not use the benefit of hindsight to second-guess strategic decisions made by counsel unless they are unreasonable. *Id.* at 690. The Supreme Court noted that "[t]here are countless ways to provide effective assistance in any given case." *Id.* at 689. Thus, to establish ineffective assistance of counsel, a petitioner has to "overcome the presumption that ... the challenged action 'might be considered sound trial strategy.'" *Id.* (citation omitted).

At the PCRA hearing, Smith's trial attorney testified that he did not act to suppress the video because it demonstrated to the jury Smith's cooperation with law enforcement. Trial counsel also testified that he did not object to the video being played because it allowed him to put Smith's version of events before the jury without Smith having to testify. *Id.*

Thus, counsel employed a trial strategy that was geared towards putting Smith's demeanor at the time of his arrest as well as his version of the events before the jury without Smith having to testify. "*Strickland* and its progeny make clear that counsel's strategic choices will not be second-guessed by post-hoc determinations that a different trial strategy would have fared better." *Rolan v. Vaughn*, 445 F.3d 671, 681-82 (3d Cir. 2006) (citing *Strickland*, 446 U.S. at 689). This decision might

be considered sound trial strategy.  *See, e.g., Rojas v. Capozza*, 2017 WL 9288171, *10, n.10 (E.D. Pa.

Nov. 21, 2017) (petitioner did not show that the decision not to object to the video or request a

curative instruction was not sound trial strategy).  Thus, counsel's decision not to object at trial did

not fall "below an objective standard of reasonableness under the circumstances."  *Siegel v. Giroux*,

2019 WL 1014730, *11 (W.D. Pa. Mar. 4, 2019) (citing *Strickland*, 466 U.S. at 688).  Smith is,

therefore, not entitled to habeas relief as to this claim.

V.      Certificate of Appealability

       AEDPA codified standards governing the issuance of a certificate of appealability for

appellate review of a district court's disposition of a habeas petition.  It provides that "[u]nless a

circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of

appeals from … the final order in a habeas corpus proceeding in which the detention complained of

arises out of process issued by a State court[.]"  28 U.S.C. § 2253(c)(1)(A).  It also provides that "[a]

certificate of appealability may issue ... only if the applicant has made a substantial showing of the

denial of a constitutional right."  *Id.* § 2253(c)(2).  "When the district court denies a habeas petition

on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate

of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it

debatable whether the petition states a valid claim of the denial of a constitutional right and that

jurists of reason would find it debatable whether the district court was correct in its procedural

ruling."  *Slack*, 529 U.S. at 484.  Applying that standard here, jurists of reason would not find it

debatable whether Smith's claims should be dismissed because lack merit or are procedurally

defaulted.  Accordingly, the Court will not issue a certificate of appealability on any of Smith's six

grounds for relief.

VI.     Conclusion

For the reasons set forth herein, Smith's Petition is dismissed, and no certificate of appealability should issue.  An appropriate order follows.

RICHARD A. LANZILLO
United States Magistrate Judge

## ORDER

AND NOW, this 12th day of May, 2019, for the reasons set forth in the Memorandum filed contemporaneously herewith, IT IS HEREBY ORDERED that Petitioner Donald Smith's claims for federal habeas corpus relief are DISMISSED with prejudice and a certificate of appealability is DENIED as to each claim. The Clerk of Court is directed to mark this case CLOSED as of this date.

RICHARD A. LANZILLO
United States Magistrate Judge